# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| JEFFERY BRIGGS | CIVIL ACTION NO. 3:10-cv-0890 |
|     LA. DOC #481039 | |
| VS. | SECTION P |
| | |
| | JUDGE ROBERT G. JAMES |
| WARDEN, FORCHT-WADE | |
| CORRECTIONS CENTER | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Jeffery Briggs filed the instant *pro se* petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on May 26, 2010. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Forcht-Wade Corrections Center, Keithville, Louisiana. Petitioner attacks his 2007 conviction on for possession with intent to distribute cocaine and the 18-year hard labor sentence that was imposed on April 11, 2007, by the Fourth Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE.**

### *Background*

On April 15, 2004, petitioner pled guilty to two counts of possession of cocaine in cases filed under Docket Number 02-F-1209-1 and 03-F-0846-1 of the Fourth Judicial District Court. In accordance with a plea agreement, other related charges were dismissed; the sentences were suspended; and petitioner was placed on supervised probation. [Doc. 1-3, Appendix D, pp. 55-56]

Thereafter, on February 9, 2006, petitioner was arrested and charged under Docket Number

06-F-0451-1, with distribution of cocaine, conspiracy to distribute cocaine, possession with intent to distribute cocaine and possession of a firearm by a convicted felon. [*Id*., p. 42]

On April 11, 2006, a probation revocation hearing was convened in cases 02-F1209-1 and 03-F-0846-1. Evidence that petitioner had engaged in criminal conduct was adduced.  Petitioner's probation was revoked and he was ordered to serve the sentences which had been previously suspended. [Doc. 1-3, Appendix D, pp. 38-59]

On January 3, 2007, petitioner pled guilty to one count of possession with intent to distribute cocaine in the case filed  under Docket Number  06-F-0451-1. In accordance with the plea agreement, the remaining charges – distribution of cocaine, conspiracy to distribute cocaine, and possession of a firearm by a convicted felon – were dismissed and the State agreed to forego prosecuting petitioner as an habitual offender. The parties also agreed to a pre-sentence investigation. [Doc. 1-3, Exhibit C, pp. 14-37] The factual basis for the plea was articulated as follows –

> [O]n February the 9th of 2006 a search warrant was issued where upon they went to the Gayden Street address that Mr. Briggs just mentioned. There they found the defendant hiding in the closet. They also and subject to that search warrant <u>recovered twenty-three rocks of crack cocaine and numerous guns</u>, three specifically which were found in the bedroom of the defendant and the defendant was arrested at that time. (Emphasis supplied)

When asked if that was an accurate statement of the facts, petitioner responded twice in the affirmative. [*Id*., p. 33]

On April 11, 2007, the sentencing hearing was convened; at its conclusion, petitioner was sentenced to serve 18 years at hard labor consecutive to the probation revocation sentences previously imposed.  Petitioner's motion for reconsideration of sentence was denied. Among other things, the Court acknowledged prior to imposition of sentence,

Upon accepting the plea the Court ordered a pre-sentence investigation to be completed by the Division of Probation and Parole. The pre-sentence report has been received and reviewed by the Court, counsel for the State and defense has been afforded the opportunity to review its contents... A review of the pre-sentence report reveals that the defendant has two prior cocaine related felony convictions, and I'll note for the record that on the pre-sentence reports since the pleas were entered on the same date that they considered that he was a  – this would be a second felony conviction although he does have two prior convictions for possession of cocaine, and those charges that were reduced down from greater charges. In case number 02-F1209 the defendant plead guilty on April 15th, 2004 to possession of cocaine and was sentenced to four years at hard labor which was suspended and he was placed on supervised probation for five years. On that same date he plead guilty to possession of cocaine in case number 03-F0846 and was sentenced to four years at hard labor which was suspended, five years supervised probation. On April 11th, 2006 his probation was revoked as a result of the instant charges. He's been incarcerated since his arrest on the current charges. This arrest originated from a Metro Narcotics investigation that resulted in the issuance of a search warrant of Jeffery Briggs' residence ... Upon entering the home agents located the defendant hiding in a closet in his bedroom.  During the personal search of the defendant Metro Narcotic agents located a serial [sic] phone and four hundred and fifty-eight dollars in cash. A subsequent search of the residence resulted in the seizure of twenty-three rocks or about four grams of crack cocaine and numerous firearms. The defendant's social history indicates that he was born the third of four boys to the non-legal union of Connie Carr and Carol Ann Briggs. The defendant indicated that he did not have a relationship with his father, nor did his father support him financially. His family has relied on his mother's Social Security disability income. He attended school in the Monroe City School System until dropping out in the ninth grade. His only employment was a job he held at Grandy's Restaurant for four to five months. He claims to have fathered three children with two women out of wedlock, but he apparently like his father has failed to provide any financial support according to the pre-sentence report. Oddly, despite his two prior convictions for possession of cocaine the defendant claims that he is not a user of illegal drugs because he has seen what they do to people. Although it seems he would not use cocaine himself he has no reservations in selling it to others for a profit.  [Doc. 1-3, Appendix B, pp. 4-13 at p. 6 (Emphasis supplied)]

In his original petition, petitioner claimed that he did not appeal his conviction and sentence.

[Doc. 1, ¶6(a)] However, he provided additional exhibits, including the docket sheet of the Ouachita

Parish Clerk of Court's office which reveals that he filed a motion for an appeal on April 16, 2007,

and that on January 16, 2008, he filed a motion to dismiss his appeal; the latter motion was granted on January 17, 2008, and petitioner's appeal was dismissed effective that date. [Doc 8-1, pp. 29-30]

On December 3, 2008, petitioner filed an Application for Post-Conviction Relief in the Fourth Judicial District Court.  [Doc. 1, ¶7(b)(iii); Doc. 8-1, pp. 20-27; see also Doc. 8-2, p. 2; Doc. 8-1, p. 31] Petitioner argued two claims for relief – (1) Ineffective assistance of counsel during pre-plea proceedings because counsel failed to file a motion to suppress; and, (2) "The evidence that was used to form the prosecution ... was obtained in violation of the United States ... Constitution for information was used against him from a P.S.I. when no one ... made the defendant fully aware of its contents." In support of this latter claim petitioner argued, "The sentencing Judge failed to determine whether or not the defendant had reviewed the P.S.I. report for himself, or at the very least, that the defendant's attorney had discussed the information within the report with him as required by the rules of criminal procedure..." Although not mentioned as a formal claim for relief, petitioner also argued that his attorney was ineffective for failing to discuss the contents of the P.S.I. Ultimately, petitioner argued that the erroneous information contained in the report was the amount of crack cocaine petitioner was alleged to be in possession of, namely 23 pieces of crack cocaine. [Doc. 8-1, p. 23-24]

On January 5, 2009, the District Court denied relief and provided written reasons for judgment.  In denying relief, the Court addressed the two broad claims for relief raised by petitioner: (1) ineffective assistance of counsel based upon counsel's failure to file a motion to suppress evidence; and (2) the failure of the Court  to provide a copy of the pre-sentence investigation report prior to sentencing. [Doc. 1-3, Appendix E, pp. 60-62] The Court denied claim one as follows,

The Court has carefully reviewed the *Boykin* guilty plea colloquy. The transcript

4

clearly indicates that the defendant admitted that he fully discussed his options and defenses with his attorney Roland Charles prior to entering his plea. He stated that he was fully satisfied with his attorney. .. Both the defendant and Mr. Charles admitted that the defendant entered into the plea agreement knowingly, intelligently, and voluntarily after considering all available options, including trial by jury." [Doc. 1-3, pp. 61-62]

With regard to the second claim, the Court noted,

The defendant also asserts that he was not able to properly prepare for sentencing because he was not provided with a copy of the pre-sentence investigation (PSI) report. However, although the defendant is not entitled to a copy of the pre-sentence investigation report, the Court nonetheless provided his attorney with a copy prior to sentencing. No objections were made specifically to the Court's reliance on the contents of the PSI. [*Id.*, p 62]

The Court did not address his claim of ineffective assistance of counsel based on counsel's failure to disclose the contents of the PSI to petitioner.

Petitioner then  filed a *pro se* application for writs in the Second Circuit Court of Appeals. [Doc. 8-1, pp. 32-41] Petitioner argued two assignments of error – (1) "The District Judge committed error sufficient to reverse his ruling when he denied the relator's application for post-conviction relief, finding the relator's counsel provided effective assistance... and, (2) The District Judge committed error sufficient to reverse his ruling when he denied the relator's application for post-conviction relief finding that the evidence had in fact been obtained within Constitutional guidelines. Relator also denied rights regarding the rules in pre-sentence investigation reports."  In this writ application petitioner again argued that counsel was ineffective because he failed to seek suppression of the evidence;  he also argued that inaccurate evidence concerning the quantity of drugs involved was relied upon in sentencing and that petitioner was denied the opportunity to review the PSI Report prior to sentencing. [*Id.*]

On June 4, 2009, the Second Circuit Court of Appeals denied writs as follows –

There is no error in the trial court's ruling. <u>The applicant's guilty plea was lawfully made within the parameters of La. C.Cr.P. art. 556.1. Since he made a lawful plea, the applicant waived his right to seek review of any non-jurisdictional defects in his proceedings before his plea was made, including his trial counsel's decision not to file a motion to suppress.</u> *See State v. Crosby*, 338 So.2d 584, 588 (La. 1976). Nevertheless, his trial counsel's decision to file motions is within the realm of tactical decisions and trial strategies are shown great deference by this court. *See State v. Grant*, 41,745 (La. App. 2d Cir. 4/4/07), 954 So.2d 823, *writ denied*, 2007-1193 (La. 12/7/07), 969 So. 2d 629; *State v. Moore*, 575 So.2d 928 (La. App. 2d Cir. 1991). A review of the record shows that the trial counsel's decision was not improper.

The applicant also argues that he was not given a copy of his presentence investigation report. <u>The record indicates that the defendant was given a copy of the report before his sentencing; therefore this claim lacks merit</u>...

[*State of Louisiana v. Jeffrey L. Briggs*, No. 44758-KH (La. App. 2 Cir. 6/4/2009) at Doc. 1-3, Appendix A, pp. 1-3]

On June 9, 2009, petitioner filed an application for writs in the Louisiana Supreme Court.[1]

His writ application was denied without comment on April 9, 2010. *State of Louisiana ex rel. Jeffery Briggs v. State of Louisiana*, 2009-1471 (La. 4/9/2010), 31 So.3d 387.

In the meantime, petitioner apparently argued a sentencing claim in the District Court under Docket Number 06-F-0451and in the Second Circuit Court of Appeals under Docket Number 43526-KH. These courts apparently rejected his sentencing claim, and, on January 30, 2009, the Louisiana Supreme Court denied writs relying on *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/1996), 665 So.2d 1172. See *State of Louisiana ex rel. Jeffery Briggs v. State of Louisiana*, 2008-0981, 999

---

[1] Petitioner has not provided a copy of the writ application he filed in the Supreme Court.

So.2d. 744.[2]

Petitioner filed his federal petition for writ of *habeas corpus* on May 26, 2010. He argued a single claim of ineffectiveness of counsel based on counsel's "... failure to inquire about the inaccuracy of the PSI." [Doc. 1, ¶5(a) and Doc. 1-2, pp. 4-4] On July 7, 2010, the undersigned completed an initial review of the petition and exhibits. Based on the information available at that time, the undersigned observed, "Petitioner presents a claim of ineffective assistance of counsel based on counsel's failure to inquire into unspecified inaccuracies in the PSI report. However, the exhibits tendered by petitioner suggest that petitioner did not present this claim to the State courts. Indeed the available evidence indicates that petitioner's ineffective assistance of counsel claim was based on counsel's alleged failure to file a pre-trial motion to suppress; and, with regard to the PSI report, petitioner complained that the Court failed to provide a copy of the report prior to sentencing."[3] Thereafter, the petitioner was directed to amend his petition and to provide, among other things, copies of the post-conviction pleadings filed in the Louisiana courts. [Doc. 3]

On August 17, 2010, petitioner submitted a Voluntary Motion to Dismiss his *habeas* petition so that he might "... exhaust his state remedies into the state level and/or amend the *habeas corpus* for re-filing to reflect the claims that were exhausted in the state level." [Doc. 5] On August 19, 2010, his motion was granted and the petition was dismissed without prejudice. [Doc. 6]

On October 8, 2010, petitioner submitted an amended petition and additional exhibits. In the

---

[2] In *Melinie, supra*, the Louisiana Supreme Court, looking to the language of La. C.Cr.P. art. 930.3, held that sentencing claims are not cognizable in an application for post-conviction relief. See *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172, reconsideration denied, 93-380 (La. 2/16/96), 667 So.2d 1043.

[3] This observation was, as noted, based on then available evidence. Petitioner had not provided a copy of his application for post-conviction relief and the undersigned, relying upon the judgments of the district court and court of appeals, concluded that petitioner did not raise an ineffective assistance of counsel claim with regard to the PSI issue.

amended petition he alleged a single claim, "Petitioner alleges his counsel ... failure to inquire about the inaccuracy of the PSI." [Doc. 8,¶5(a)] However, in a pleading entitled "Request to Review" petitioner asked the Court to review the claims that were exhausted at the state level. [Doc. 8, p. 8] In an accompanying Memorandum, petitioner formally argued two claims:

Claim I – Ineffective Assistance of Counsel – Counsel for the petitioner failed to file a Motion to Suppress the Evidence.

Claim II – The Trial Court Judge failed to allow the petitioner the right to view his Pre-Sentence Investigation Report prior to sentencing. [Doc. 8-2, p. 4]

Based on this pleading, it was assumed that petitioner wanted to continue litigating his *habeas* claims and therefore the suit was reinstated. Having now reviewed the state court pleadings which were supplied by petitioner in response to the amend order, it appears that petitioner may have in fact exhausted his claim of ineffective assistance of counsel based on counsel's failure to inquire about the inaccuracies of the PSI Report.[4]   However, as is shown below, further amendment is unnecessary.

### *Law and Analysis*

### *1. Rule 4 Considerations*

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be

---

[4] Of course, this tentative finding assumes that petitioner raised these claims in his application for writs filed in the Louisiana Supreme Court, and, as has elsewhere been shown, petitioner has not yet provided a copy of the writ application filed in that court.

notified."  (See also *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Among other things, petitioner has provided copies of the documents associated with the search warrant [Doc. 8-1, pp. 9-11; p. 16], the offense reports [Doc. 8-1, pp. 6-8; 13-15], the transcripts of the probation revocation hearing [Doc. 1-3, pp. 39-59], the plea colloquy [Doc. 1-3, pp. 15-37], and the sentencing hearing [Doc. 1-3, pp. 5-13], and the written reasons for judgment of the Fourth Judicial District Court [Doc. 1-3, pp. 61-62]  and the Second Circuit Court of Appeals [Doc. 1-3, pp. 2-3] denying post-conviction relief.

Petitioner's pleadings and exhibits establish that he is not entitled to relief and his *habeas* petition should therefore be dismissed with prejudice in accordance with Rule 4.

### 2. AEDPA Standards for Review

This petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), therefore federal *habeas corpus* review is governed by the provisions of the AEDPA, specifically 28 U.S.C. § 2254(d)(1) and (2) which define the standard for review.

Under the AEDPA, *habeas* relief is not available to a state prisoner on a claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."

28 U.S.C. §§ 2254(d)(1) and (2).

Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001). The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Id.* at 409-10. A state court's <u>incorrect</u> application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>. *Id.* at 410-12 (emphasis supplied).

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the state court's factual findings are correct. See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000).

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state court's

10

decision, not its reasoning or written opinion, to determine whether it is contrary to or a misapplication of clearly established federal law." *Catalan v. Cockrell*, 315 F .3d 491, 493 (5th Cir.2002), citing  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002) (*en banc*).

Petitioner's claim  of ineffective assistance of counsel, based on counsel's failure to file a pre-trial motion to suppress, and his claim that the court failed to provide him a copy of the PSI prior to sentencing were adjudicated on the merits. Therefore, these two claims for relief must be analyzed in light of the foregoing principles of law.

### Claim One – Ineffective Assistance of Counsel (Failure to file Motion to Suppress)

Petitioner raised the substance of his first claim of ineffective assistance of counsel in his *pro se* application for post-conviction relief, thereafter in his application for writs in the Second Circuit, and, presumably in his writ application in the Supreme Court.  In denying relief, the District Court determined that petitioner's guilty plea was voluntary.[5]  The Second Circuit Court of Appeals  ruled that petitioner's voluntary plea  waived  any pre-plea errors, including the claim for ineffective assistance of counsel based on counsel's failure to file a motion to suppress.[6]   The Louisiana

_____

[5]  As previously noted, the District Court made the following findings of fact and conclusions of law: "The Court has carefully reviewed the *Boykin* guilty plea colloquy. The transcript clearly indicates that the defendant admitted that he fully discussed his options and defenses with his attorney Roland Charles prior to entering his plea. He stated that he was fully satisfied with his attorney. .. Both the defendant and Mr. Charles admitted that the defendant entered into the plea agreement knowingly, intelligently, and voluntarily after considering all available options, including trial by jury." [Doc. 1-3, pp. 61-62]

[6]  The Second Circuit observed, "Since he made a lawful plea, the applicant waived his right to seek review of any non-jurisdictional defects in his proceedings before his plea was made, including his trial counsel's decision not to file a motion to suppress. *See State v. Crosby*, 338 So.2d 584, 588 (La. 1976). Nevertheless, his trial counsel's decision to file motions is within the realm of tactical decisions and trial strategies are shown great deference by this court. *See State v. Grant*, 41,745 (La. App. 2d Cir. 4/4/07), 954 So.2d 823, *writ denied*, 2007-1193 (La. 12/7/07), 969 So. 2d 629; *State v. Moore*, 575 So.2d 928 (La. App. 2d Cir. 1991). A review of the record shows that the trial counsel's decision was not improper."[*State of Louisiana v. Jeffrey L. Briggs*, No. 44758-KH (La. App. 2 Cir. 6/4/2009) at Doc. 1-3, Appendix A, pp. 1-3]

Supreme Court's subsequent one-word writ denial is presumed to have been based upon the same grounds identified by the Court of Appeals, which was the last reasoned judgment in this case. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991)("When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.")

Under federal law, once a voluntary, knowing and intelligent guilty plea has been entered by a criminal defendant, all non-jurisdictional defects in the proceedings preceding the plea are waived, including all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)*; McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)*, Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (A guilty plea represents a break in the chain of events which has preceded it in the criminal process; therefore, when a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea, and he may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel amounted to ineffective assistance of counsel); see also*, Smith v. Estelle*, 711 F.2d 677, at 682 (5th Cir. 1983); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5 Cir.1981).

Further, a federal court will uphold a guilty plea challenged in a *habeas* proceeding provided the plea is shown to have been knowing, voluntary, and intelligent. *James v. Cain*, 56 F.3d 662, 666 (5th Cir.1995). A guilty plea is considered knowing and voluntary and intelligent so long as a

defendant has been advised and indicates that he knows and is aware of "the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir.1996) (citing *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir.1990)). Thus, if the *habeas* petitioner "understood the length of time he might possibly receive, he was fully aware of his plea's consequences." *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir.1982). Put yet another way, a guilty plea is considered "voluntary" if it is made by a defendant who is "'fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel'" and who has not been "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir.1957). When analyzing a collateral attack on a guilty plea entered pursuant to a plea bargain, "the representations of the defendant, his lawyer, and the prosecutor at [the original plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

The District Court and the Court of Appeals applied the appropriate federal standard when they determined that petitioner's voluntary plea waived any pre-plea defects.

Further, the transcript of the plea colloquy confirms beyond any doubt that the petitioner's guilty plea was knowing and voluntary. The court, having previously determined that the plea agreement made no provision for a sentencing cap, other than the maximum allowed by the statue

[Doc. 1-3, p. 17], recited the terms of the plea agreement as follows, "Now, it's my understanding that you will be pleading guilty to count three which is possession of cocaine with the intent to distribute. The remaining charges will be dismissed upon sentencing... And also the State has agreed not to seek habitual offender status in your case and to attempt to enhance the penalties because you have prior convictions... Is that your understanding of the full and complete agreement?" To which petitioner responded, "Yes, sir." [Doc. 1-3, p. 21] Thereafter, the Court advised petitioner that he was charged and pleading to possession with the intent to distribute cocaine and defined the crime and its maximum and minimum penalties as follows, "Distribution, dispensing, or possession with intent to distribute or dispense ... cocaine base or a mixture or substance containing cocaine and its analogues <u>shall be sentenced to a term of imprisonment at hard labor for not less than two years nor</u> <u>more than thirty years. The first two years of said sentence being without benefit of parole, probation</u> <u>or suspension of sentence. And may in addition be sentenced to pay a fine of not more than fifty</u> <u>thousand dollars. Okay. Do you understand the penalties? ... You understand that there's a minimum</u> <u>period of incarceration of two years and a maximum of thirty?</u>" To which petitioner responded, "Yes, sir." [Doc. 1-3, p. 22]

After ascertaining petitioner's educational and vocational background, the Court asked, "... Do you have a full understanding of the nature of the charges against you and the consequences of your plea? ... Are you satisfied that you and Mr. Charles [retained trial counsel] have had the opportunity to explore all you alternatives to – Well, all the alternatives that you have today? ... And that you don't have to plead guilty and that you could go to trial today?" To which petitioner again responded in the affirmative. [doc. 1-3, pp. 26-27] Thereafter, the following colloquy took place:

Court: All right. Are you satisfied with Mr. Charles' representation of you in this

matter?

Briggs: Yes, sir.

Court: Okay. Mr. Charles, just for the record would you tell me ... you've had the opportunity, I would think, to consult with him on several occasions?

Charles: Yes, sir.

Court: And you had the opportunity to talk to him this morning about this plea. Is it your opinion that Mr. Briggs is competent to make a knowingly, intelligently, voluntary waiver of those rights?

Charles: Your Honor, we spoke on several occasions since he's been in jail. We went to the jail and I'm convinced that, yes, he understand and he's competent to make that decision.

Court: Okay. Have you had any – Taken any drugs, alcohol or medications in the last five days?

Briggs: No, sir.

Court: All right. Are you under any physical, mental or emotional – Do you have any physical, mental or emotional problems that would prevent you from understanding what you're doing today?

Briggs: No, sir.

Court: Have you ever been diagnosed with any psychiatric or psychological issues that might give you problems with understanding today?

Briggs: No, sir.

Court: Okay, All right. Now has anyone, including your attorney, or the prosecuting attorney threatened you, tricked you or offered you any inducements other than this plea agreement [in] exchange for your plea of guilty this morning?

Briggs: No, sir.

Court: Has anyone made you any guarantees or any promises other than what has been recited on the record today?

Briggs: No, sir. [Doc. 1-3, pp. 27-28]

15

The Court then explained petitioner's Constitutional rights (1) to a speedy and public trial by jury; (2) to counsel; (3) to require the prosecutor to prove his guilt beyond a reasonable doubt; (4) to confront adverse witnesses; (5) to subpoena witnesses and to testify on his own behalf; and, (6) to remain silent. The court then advised petitioner as follows, "Do you understand that by pleading guilty you are in fact incriminating yourself and telling me that you did in fact do this offense? ... And you can't be forced to do that? You understand?" To which petitioner again responded in the affirmative. [Doc. 1-3, pp. 29-30] The Court then engaged in the following colloquy:

> Court: Do you also understand that by pleading guilty you will also be giving up your right to seek relief from me or a higher court regarding legal defects or violations of your constitutional rights in these proceedings which could result in the dismissal of these charges?
>
> Briggs: Yes, sir. I understand.
>
> Court: Okay. Did you understand everything that I've talked to you about so far?
>
> Briggs: Yes, sir.
>
> Court: All right. Do you understand that by pleading guilty you're giving up all those constitutional rights and privileges?
>
> Briggs: Yes, sir.
>
> Court: Do you want to do that?
>
> Briggs: Yes, sir.
>
> Court: Okay. Is there anything that I've discussed with you that you don't understand or that you'd like for me to go over in more detail?
>
> Briggs: Yes, sir. I understand everything.
>
>              *        *        *
>
> Court: <u>Okay. Are you entering this plea freely and voluntarily and as a result of your</u>

16

<u>own independent decision?</u>

Briggs: <u>Yes.</u> [Doc. 1-3, pp. 30-32]

The Court then requested the factual basis for the charges and the prosecutor complied as follows: Concerning the factual basis on February 9th of 2006 a search warrant was issued where upon they went to the Gayden Street address that Mr. Briggs just mentioned. There they found the defendant hiding in the closet. They also and subject to that search warrant recovered <u>twenty-three rocks of crack cocaine and numerous guns, three specifically which were found in the bedroom of the defendant and the defendant was arrested at that time</u>." When asked if that was a correct recitation of what happened, petitioner responded, "<u>Yes. Yes.</u>" [Doc. 1-3, p. 33]

The Court then stated, "Upon the record before me I find that this plea is entered freely, voluntarily, and with the understanding of the nature of the charges and the consequences of the plea including the defendant's understanding of the plea bargain agreement. ... It has a factual basis containing all the elements of the crime charged. The plea is therefore accepted..." [*Id.*]

Clearly, petitioner understood his constitutional rights and the consequences of his guilty plea. By his own admission, under oath, his guilty plea was knowing and voluntary. The trial judge who accepted the plea likewise found it to be knowing and voluntary. Therefore, petitioner's plea operated as a waiver of his ineffective assistance of counsel claim based on counsel's failure to file a pre-trial motion to suppress.

The Court of Appeals arrived at this same conclusion and petitioner has not demonstrated that the Court's findings of fact and the application of those facts to clearly established federal law were unreasonable, therefore, Claim One must be denied.

Further, even if petitioner's plea did not operate as a waiver of his right to claim ineffective assistance of counsel, the result would be the same because a lawyer cannot be ineffective for failing to pursue futile motions. *See*, e.g., *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990). Petitioner has not shown how the search of his residence violated the Fourth Amendment. He suggests that a prior warrantless search was conducted by the Monroe Swat Team which resulted in the seizure of 14 rocks of crack cocaine and 8 firearms. He bases this assertion on testimony at petitioner's probation revocation hearing which was provided by Det. Trish Passman of the Metro Narcotics Squad. However, the arrest reports and search warrant establish that there was only one search of the residence in question on February 9, 2006 and that search was conducted by both the SWAT team and the Metro Narcotics Unit, was done pursuant to a warrant, and resulted in the seizure of a "... plastic bag containing crack cocaine..." and seven guns including a a stolen Marlin 44 caliber rifle; a Marlin 30/30 rifle; a Browning semi-automatic .22 handgun; another .22 caliber handgun; a stolen Remington 870 pump shotgun; a Sears and Roebuck 12 gauge pump shotgun; and a Winchester Model 80-A .22 caliber bolt action single shot rifle. [Doc. 8-1, pp. 10-11]

Det. Passman apparently erred in his testimony at the revocation hearing. The contemporaneous documentary evidence – the offense reports and search warrant returns – confirms that 23 rocks of crack cocaine and 7 weapons were seized as a result of the search conducted on February 9, 2006. Contrary to petitioner's assertion, there is absolutely no evidence that a warrantless search (or any other search) preceded the February 9, 2006 search. [See Doc. 8-1, pp. 6-16; see also Doc. 1-3, p. 51]

Finally, petitioner insinuates that the evidence could have been suppressed based on his assertions, confirmed by the testimony of his mother, that he did not reside at 3904 Gayden Street,

18

Monroe, Louisiana, and therefore the drugs and guns found there could not have been in his possession. However, at the time of his guilty plea, petitioner stated under oath that he resided at that location. [Doc. 1-3, p. 23]

In short, petitioner has not shown that a motion to suppress would have been anything other than futile and therefore, the failure of his attorney to file such a motion does not equate to deficient performance or prejudice sufficient to establish ineffective assistance of counsel since the failure to raise meritless, futile objections or defenses can never constitute ineffective assistance of counsel. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990) (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir.1984) (*per curiam*)).


### *Claim II – The Trial Court Judge failed to allow the petitioner the right to view his Pre-Sentence Investigation Report prior to sentencing*

Petitioner raised this second claim in his application for post-conviction relief, thereafter in his writ application filed in the Second Circuit, and, presumably in the writ application filed in the Supreme Court. The District Court denied relief on this claim as follows: "... although the defendant is not entitled to a copy of the pre-sentence investigation report, the Court nonetheless provided his attorney with a copy prior to sentencing. No objections were made specifically to the Court's reliance on the contents of the PSI." [Doc. 1-3, p 62] The Court of Appeals likewise rejected this claim as having no basis in fact as follows, "The applicant also argues that the was not given a copy of his presentence investigation report. The record indicates that the defendant was given a copy of the report before his sentencing; therefore this claim lacks merit..." [*State of Louisiana v. Jeffrey L. Briggs*, No. 44758-KH (La. App. 2 Cir. 6/4/2009) at Doc. 1-3, Appendix A, pp. 1-3]

The record confirms these findings of fact. At the commencement of the sentencing hearing, the trial court noted, "Upon accepting the plea the Court ordered a pre-sentence investigation to be completed by the Division of Probation and Parole. <u>The pre-sentence report has been received and reviewed by the Court, counsel for the State and defense has been afforded the opportunity to review its contents</u>." [Doc. 1-3, p. 6] The lack of objection or comment thereafter by the petitioner or his attorney strongly suggests that the court's statement was true. In any event, the finding of fact made by the State Courts is presumed to be correct and petitioner has not shown that finding to be unreasonable and therefore, petitioner is not entitled to relief on Claim Two.

### Claim Three – Ineffective Assistance of Counsel
### based on counsel's  failure to inquire about the inaccuracy of the PSI

As shown above, petitioner arguably raised this claim of ineffective assistance of counsel in his original application for post-conviction relief. However the merits of this aspect of the claim were never addressed. Nevertheless, even if the deferential standards of the AEDPA are not applied to this claim, it is clear that it is without a basis in fact or law.

According to petitioner, his trial counsel rendered ineffective assistance when he failed to contest an alleged inaccuracy in the PSI Report – namely, the number of rocks of crack cocaine that were seized pursuant to the February 9, 2006, search and ultimately found to be in the constructive possession of the petitioner.

Prior to sentencing, the court recited the contents of the PSI Report including the following statement, "This arrest originated from a Metro Narcotics investigation that resulted in the issuance of a search warrant of Jeffery Briggs' residence located at 3904 Gayden Street in Monroe. Upon entering the home agents located the defendant hiding in a closet in his bedroom. During the

20

personal search of the defendant Metro Narcotic Units agents located a serial [sic] phone and four hundred and fifty-eight dollars in cash. <u>A subsequent search of the residence resulted in the seizure of twenty-three rocks or about four grams of crack cocaine and numerous firearms</u>." [Doc. 1-3, p. 7]  Petitioner, of course, contests the veracity of this finding based upon the prior testimony of Det. Passman at the probation revocation hearing. Nonetheless, at the time of his guilty plea, the factual basis for the plea was provided, and, as shown above, the prosecutor, in articulating the basis for the plea noted, "<u>They ... recovered twenty-three rocks of crack cocaine</u>... and the defendant was arrested at that time." And, when asked if that was an  accurate description of the offense, the petitioner responded, "Yes. Yes." [Doc. 1-3, p. 33] In other words, petitioner specifically affirmed that twenty-three rocks of cocaine were recovered in connection with his arrest, and he therefore has shown no inaccuracy in the PSI Report.  As a result, the failure of his attorney to object was neither deficient performance nor prejudicial to the petitioner.

Further, petitioner had two opportunities – during the course of the plea colloquy, and thereafter during sentencing – to correct that statement and he chose not to.

### Conclusion and Recommendation

Petitioner has submitted the relevant portions of the state court record. It is abundantly clear that he has not shown that he is in custody in violation of the Constitution or laws of the United States, and therefore, his petition for habeas corpus must be dismissed with prejudice. Therefore, **IT IS RECOMMENDED** that this petition for *habeas corpus* be  **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to

file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, November 10, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE